UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.    )<br>)<br>PASQUALE SALAS    ) | Docket No.  19CR40033 |

### SENTENCING MEMORANDUM OF PASQUALE SALAS

### I.  Introduction

The defendant, Pasquale Salas, submits this memorandum and requests a non-guidelines sentence of the mandatory minimum 15 years of incarceration followed by 5 years of supervised release and whatever additional terms the court deems appropriate.  Mr. Salas respectfully suggests that his proposed disposition would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Within this memorandum are arguments supporting the defendant's request for a non-guidelines sentence.  These include an application of 18 U.S.C. § 3553(a) to the facts of his case, his personal history, characteristics, as well as the collateral consequences of this matter.  He further cites the rest of this memorandum, attachments, and those arguments raised at the sentencing hearing  in support of his request.

### II.  Request for Non-Guidelines Sentence and the Application of 18 USC 3553(a)

With the sentencing guidelines as advisory, the Court must also look to 18 U.S.C. § 3553(a) to inform its sentencing decision.  That statute provides factors for the court to use and provides the framework for Mr. Salas' request.  For all the reasons contained herein, his proposed sentence is an appropriate resolution of his case.

The defendant respectfully suggests that the controlling principle of the applicable statute is within the first paragraph: the court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of incarceration.  See *18 U.S.C. §3553(a)*.  According to that same law, any

sentence imposed must: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  See *18 U.S.C. § 3553(a)(2)*.  In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the advisory guidelines, any pertinent policy statement in the Guidelines Manual and related departures, as well as the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See *18 U.S.C. § 3553(a)(1) et seq.*

Other statutory sections also give the District Court direction in sentencing.  Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is **not** an appropriate means of promoting correction and **rehabilitation**." (emphasis added).  Under 18 U.S.C. § 3661, "**no limitation** shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added).

Sentencing under §3553(a) therefore requires the Court to start with the minimum sentence permissible and add only so much additional punishment, if any, as is necessary to comply with the §3553(a)'s purposes.  As discussed below, application of the §3553(a) factors to Mr. Salas' case establishes the mandatory minimum sentence of 15 years of incarceration followed by 5 years of supervised release and whatever additional terms the court deems appropriate is sufficient but not greater than necessary to achieve the purposes of sentences.

### A.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant Support the Defendant's Requested Sentence

One of the most difficult parts of this case is the dissonance between Mr. Salas' life online versus the real world.  In the real world he was just as helpful and accomodating as one could be.  He was well liked and had developed positive relationships at work.  His family have a special place in their hearts for him and, while disappointed, have not waivered in their support during this difficult time.  What no one knew, however, were his personal struggles with alcohol and deviance from societal norms while alone on his computer.

The fact that Mr. Salas went from Janitor to Patrolman solidifies the kind of progress he is capable of when properly focused.  He had always intended to follow his mother's path to law enforcement and stayed committed to that idea through an unpaid year of academy when he relied heavily on his parents.  Mr. Salas' hard work, and his family's sacrifice, paid off when he capably served his county as a patrolman.  He was considered a "great deputy" by his Sheriff and had no disciplinary history or other disruptive behavior in the workplace.  *See* Exhibit 1, May 21, 2020 Bay City Sentinal Newspaper Article.  But they could not have known what was happening in his personal life because he never let anyone in.

The work did not help with his mental health no matter how much he wanted to do it.  After seeing his first dead body on patrol, Mr. Salas withdrew even further and began drinking harder.  Even his closest family did not know the depth of his alcohol abuse.  For approximately three and one half years he consumed as much as a 12 pack of beer per day and 4 to 9 pints of Jack Daniels per week.  His daily pattern often included changing after coming home from work and drinking until he fell asleep at night.

Like any other problem, he couldn't keep it hidden forever.  Medical records from Tuesday April 23, 2018 offer a snapshot of a person in an alcohol induced crisis.  *See* Exhibit 2, filed seperately

under seal. Treatment notes indicate Mr. Salas complained at admission of vomiting related to something he ate; but the blood test results tell a different story. Nursing staff reported his admission diagnosis as "Dehydration, ETOH toxicity, Gastroenteritis, and UTI." The first blood test that included ETOH results were not until midnight of the following day, about 17 hours after admission, and resulted in a .11 BAC.

Much like his alcohol problems, his online deviance did not stay in the dark of his apartment. When they became very real during his interrogation by the FBI at his workplace, Mr. Salas gave a total confession. His case has been covered extensively by the local press in Texas and, despite the difficulty associated, his family has not abandoned him. Attached with this memorandum are letters in support that are remarkable. *See* Exhibits 3, 4, 5, 6 and 7. His siblings and parents know Mr. Salas has done wrong and understand, better than most, that there will be consequences. What is most notable is their commitment to his future and rehabilitation. They know it will be some time in the future but they are ready to help him pick himself up after incarceration.

### B.     The Purposes of Sentencing Support The Defendant's Requested Sentence

Section 3553(a) lists four purposes of sentencing, which can be summed up as: (1) just punishment; (2) deterrence; (3) protection of the public; and (4) rehabilitation. Under the parsimony principle the sentence should be the minimum necessary to accomplish these purposes.

#### 1.  Just Punishment and Deterrence

When the court considers just punishment, Mr. Salas asks you to look at not just his charges but how far he has fallen as a result of this case.[1] Instead of doing the accusing, Mr. Salas has become the person accused. This reversal of circumstances has had a dramatic effect on his self identity, self

---

[1] A learned Judge of the Massachusetts Federal District Court previously observed, as recited by the appellate decision, in *United States v. Prosperi* "it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system [as defendants] who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed." *United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012).

worth, and has been a distinct burden on him that will continue after sentencing by this court.  Mr. Salas acknowledges that there will be a punishment and he knows why.  He does, however, request the court tailor his sentence to the signficant punishment mandated by the statute.

Unlike more general laws, such as those criminalizing guns or drugs, the operating statute in this case has very specific considerations about punishment.   The choice of a mandatory minimum sentence was made after Congress weighed the distinct situation that Mr. Salas finds himself in and made a declaration of its seriousness.  While the guidelines do present case specific issues, they do not adequately consider the weight of subjective mitigating factors from Mr. Salas' background as recited above.  The defendant therefore requests the court impose the mandatory minimum sentence which is still significant.

In terms of deterrence, the fact is that many people still believe that their digital life is anonymous.  The truth is very far from that delusion.  But a corrolated belief is that what happens online isn't real.  A sentence of 15 years of incarceration followed by as many years and whatever conditions the court deems necessary will convince anyone that digital platforms have tangible consequences.

**2.  Protection of the Public and the Need for Rehabilitation**

Even if the court agrees with the defendant's proposed sentence, he will be incarcerated through the rest of his 20's and the entirety of his 30's.  He respectfully requests he be given an opportunity to do so without having to serve a sentence that carries well into his 40's.  What this will do is provide him the chance for economic as well as mental rehabilitation.  While it may be difficult to find a new career after a conviction like this, it will not be impossible, and he would have some years of working life left in the age of 40 versus 50.  This would make a meaningful difference in his rehabilitative process.

No matter when he gets out there will be a number of collateral consequences associated with this conviction.  Mr. Salas has reviewed and come to terms with them.  Even after his lenthy incarceration,

his return to society will be tightly regulated.  Sex offender registration and treatment is a critical component to successful supervised release for Mr. Salas' case and he knows what he needs to do: follow the probation department's directives and comply in total.  He fully expects to do so without negotiation or complaint.  This, in turn, will ensure the safety of the public.

Mr. Salas understands there will be social costs associated with his status and he is ready to face them; as seen in his family's letters he will not be alone.  Mr. Salas finds strength in their support and believes he can channel that strength into his rehabilitation whenever the opportunity for supervised release comes.  Given the depth of his support network, and strength of his character when sober, there is no question he will chart a new course in life.

## V.     CONCLUSION

Accordingly, the defendant requests that in light of the circumstances of this case the court issue a non-guidelines sentence of the mandatory minimum 15 years of incarceration followed by 5 years of supervised release and whatever additional terms the court deems appropriate.  The defendant additionally requests credit for the time held in custody since his arrest on July 31, 2019 and that his sentence be served in Texas.

Respectfully Submitted,
Pasquale Salas, defendant
By his Attorney,

*/s/ Leonardo A. Angiulo*
Leonardo A. Angiulo, Esq.
P.O. Box 2903
Worcester, MA 01613
(508) 868 – 0899
leonardo@angiulolaw.com
BBO No. 667166

## CERTIFICATE OF SERVICE

    I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                          */s/ Leonardo A. Angiulo*
                                          Leonardo A. Angiulo, Esq.

Dated: September 11, 2020