UNITED STATES DISTRICT
COURT DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal No. 19CR40033-TSH |
| | ) |
| PASQUALE the defendant, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States respectfully recommends that the Court sentence Pasquale SALAS (the "defendant") to a term of imprisonment of 300 months followed by five years of supervised release. The recommended sentence is at the lower end of the guidelines as calculated by the parties and the Probation Department. Further, a 300-month term of imprisonment reflects the sentencing factors enumerated in 18 U.S.C. § 3553, and is sufficient but not greater than necessary to reflect the seriousness of the offense, to provide just punishment for the defendant's conduct, to promote respect for the law and afford adequate deterrence to criminal conduct, and to protect the public from the defendant's future violence.

**I.    The nature and circumstances of the offense[1]**

Pasquale The defendant undertook a years' long effort to sexually exploit vulnerable children.  In 2014, when he was approximately 20 years old, he used an online gaming platform called "Minecraft" to meet a Worcester county girl, Victim 1, who was then 12 years old (born

---

[1] The Government incorporates the full statement of offense conduct submitted as Exhibit 1 to the Plea Agreement and reproduced in the Pre-Sentence Investigation, and shall, where appropriate, supplement that statement of facts as relevant to the matters discussed herein.

November 2001).  Knowing that she was only twelve, the defendant began grooming her to perform sexually explicit acts for him.  He sent Victim 1 images and videos of himself masturbating.  Within months of meeting her online, he coerced her to send sexually explicit pictures and videos of herself, giving her instructions on how to touch herself and what positions she should assume.  In order to maintain control of Victim 1, the defendant told her that he saved her sexually explicit images and videos.  He coerced her into broadcasting sexually explicit conduct via social media stream for him to view, and utilized technology to record those sessions so that he could maintain a recording of them.  In 2016, after approximately two years of this coercion, Victim 1 tried to end contact with the defendant.  He threatened to expose her sexually explicit images and videos if she did not remain in contact with him and continue to send images.  He also threatened to publish her nude images if she changed her passwords for her social media accounts or if she did not keep the location feature activated on her Snapchat account.   The defendant required Victim 1 to call him or answer his calls to her cell phone, multiple times a day, at all hours of the day and night.  Phone records from his AT&T cellphone show contact beginning in October 2014, then significant phone contact in 2018-2019, approximately 1,700 calls.   Victim 1 reported periods when she did not attend school and did not sleep at night in order to respond to his calls.

   The defendant monitored Victim 1's daily life by tracking her whereabouts through the Snapchat application.  At his insistence, she set her Snapchat settings so that he could monitor her location via GPS.  Victim 1 told investigators that the defendant also threatened to physically harm Victim 1 and rape Victim 1's younger sister if she did not obey his directions.  She said she was afraid to disobey him because he told her that he was a police officer and said that he had people watching her.  The defendant sent her an image of his Matagorda County Sheriff badge.

    The defendant demonstrated his control over Victim 1 in many ways. He sent her a list of ""Rules for [Victim 1]" and "Punishments" that the defendant – who referred to himself as

"Daddy" – had issued to her.  Examples of the "Rules" included a prohibition on Victim 1's ability to socialize and a declaration that she was "his property."  When the defendant was arrested, he had a handwritten version of those rules in his wallet, in his cruiser.

The defendant directed Victim 1 to communicate with two Snapchat accounts of people he identified as his "friends," one named "Levi" and another named "Johnny." According to Victim 1, the defendant later instructed Victim 1 to send nude images of herself to "Levi" and "Johnny" and threatened to release her naked images to her friends and family if she did not comply.   Both "Johnny" and "Levi" informed Victim 1 that they were watching Victim 1 and knew her location, and that they would report back to "Gino."  Victim 1 told officers that she sent sexually explicit images to "Levi."  The defendant told the FBI that he made up those accounts "for entertainment" and admitted that he had threatened Victim 1 that he would release sexually explicit photos and videos of her if Victim 1 did not send sexually explicit images to his "friends" who purportedly used those Snapchat accounts.

In or around May 2019, Victim 1 ended contact with the defendant.  Victim 1 told the defendant that her parents knew everything and she could no longer communicate with him.  Victim 1 asked the defendant to stop contacting her.  Despite that request, the defendant repeatedly attempted to contact Victim 1.  Victim 1 then blocked the defendant from her social media accounts and blocked his cellphone number. The defendant then began calling and texting Victim 1 from numerous (508) area code numbers and other numbers that she did not associate with him.  For example, on May 6, 2019, the defendant contacted Victim 1 from a 508-number.  Victim 1 answered the call because the caller had a Massachusetts area code.  The defendant said, "Hi, how are you?"  Victim 1 immediately hung up and blocked the number.

Victim 1 then received multiple text messages from different telephone numbers with (508) area code numbers.  On May 6, the defendant sent text messages from a least five additional "508"

3

numbers including a text message reading, "Since you answered... you lied. You have 5 mins to call me. Or you pictures are on Instagram and I tell [Victim2] go spread the word for real.  Your (sic) call in case you blocked that other number"  In another text, he threatened to call her father.

Victim 1 received another text message on May 6, 2019 text message reading "So you lied to me..coward way of breaking up with me. Lost our streak for no reason.  I'll be doing everything I told you I would be doing.  Have a good life."   A "streak" is a reference used on Snapchat that identifies the number of consecutive days that the individuals have communicated.  Victim 1 said that her streak with the defendant was 800 days.

When the defendant threatened to "tell [Victim 2] to spread the word for real," Victim 1 knew what he meant.  She was aware that the defendant had been communicating with another Worcester County girl, who she knew personally, hereinafter referred to as "Victim 2" (born November 2002). Victim 1 and Victim 2 participated in the same Minecraft game as the defendant and had been involved in group chats using Snapchat.

Victim 2 also met the defendant through Minecraft and had sporadic contact with him since she was approximately 12 years old. She disclosed her true age to the defendant and he knew that she attended middle school. The defendant told Victim 2 that he was a police officer, that he had people watching her, and that he had traveled to Massachusetts and "checked" on her.  The defendant told Victim he had friends in the area and they were watching Victim 2 go to school in the morning. The defendant told Victim 2 he had a yellow truck and she should look out for it.  The defendant would often ask Victim 2 if she had her lights on in her bedroom, to make it appear as though someone was watching.  Victim 2 felt scared of her surroundings, even going to school and getting on the bus. The defendant described Victim 2's home, family, and activities in a way that made her believe he was having her followed.  The defendant told Victim that he had friends in Victim 2's town who were police officers and if she told anyone that she was talking to him they wouldn't

4

believe her.  The defendant said he spoke to Victim 2's mother and she was "on his side."

According to Victim 2, the defendant would repeatedly ask her to "dance for me" and "send me pictures."  Victim 2 understood him to be asking for nude pictures by the tone of his request and the type of emoji he sent. Victim 2 said she had sent at least one sexually explicit photograph to the defendant.  Victim 2 said she felt that if she did what he said, the defendant wouldn't come to her house and hurt her or her family.

The defendant told Victim 2 he wanted her Snapchat login and password.  She felt as though she had to provide the information to the defendant because he continued to tell her that he was in the Massachusetts area and that his friends in the area were "scarier" than he.

## II.     A Guidelines sentence is appropriate under the Section 3553(a) factors.

As noted above, the sentence recommended by the government is intended to reflect the seriousness of the offense, to provide just punishment for the defendant's conduct, to promote respect for the law and afford adequate deterrence to criminal conduct, and to protect the public from the defendant's further crimes.  The Supreme Court has given this Court specific guidance on how to make that determination: the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors set out by 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter. Nelson v. United States, 555 U.S. 350, 351, 129 S. Ct. 890, 891–92, 172 L. Ed. 2d 719 (2009).   In pertinent part, these factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; and  (c) to protect the public from further crimes of the defendant.  Because the guidelines are now advisory, the court can impose a sentence up to the statutory maximum if this sentence is sufficient but not

greater than necessary under the § 3553 factors listed above.

    A. <u>Guideline calculation</u>

The parties agree that, based upon a Criminal History Category I and total offense level 40, the defendant's advisory sentencing guideline range is 292-365 months imprisonment. The offense of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e) also carries a mandatory minimum period of incarceration of fifteen years.

    B. <u>Nature, circumstances, and seriousness of the offense</u>

It is difficult to overstate the egregious nature of the defendant's conduct. The seriousness of the offense and the need to provide just punishment are inextricably woven when considering the appropriate sentence for this defendant. In order to determine a just punishment, the Court must consider not only the nature of the offenses but the circumstances under which the defendant committed them. The defendant exploited these two victims for years- from 2014 until he was finally arrested in 2019. During that time, the defendant attended and graduated from a police academy and worked as a sheriff's deputy in Texas. As the defendant highlights, he had "no disciplinary history or other disruptive behavior in the workplace." He maintained family relationships and friendships, as demonstrated by the multiple loving letters of support his family submitted in support of the defendant's sentencing request. There can be no question that the defendant was *not* the "person with no prior experience with the criminal justice system who finds himself accused of a crime" described in *United States v. Prosperi*. This defendant was a law enforcement officer, educated and sworn to uphold the rule of law. Instead, he exploited that role to gain control over vulnerable children. Not only did he victimize these girls by requiring them to produce sexually explicit conduct for his personal benefit, he did so under a pretense of a "relationship" with these girls. He held himself out as both an authority figure and as a

"boyfriend," showering them with gifts and threats in alternating messages.  In addition to the recognized harm of sexually exploiting children, he gave a harmful impression of both law enforcement and the nature of relationships to young girls undergoing formative years in their development.

    C. <u>The History and Characteristics of the defendant and specific deterrence</u>

The defendant contends that his personal history weighs in favor of a downward variance.  He has no prior convictions, a fact already taken into consideration in the Guidelines calculation.  He worked as a law enforcement officer and utilized that role to intimidate his victims.   He claims that the stress of that job led him to abuse alcohol.   Even assuming that is true, the Court should not view this as a reason for a downward departure.  U.S.S.G. § 5H1.4  (Alcohol dependence or abuse ordinarily is not a reason for a downward departure.)  He has offered no reason to believe that the use of alcohol related to his conduct.   In contrast, it appears that to whatever extent the defendant used or abused alcohol, he was able to maintain a steady job and family connections.   In his communications to Victim 1 and 2, he exuded control. He coerced these girls into following his demands by manipulating and terrorizing them.  He alternated between sending messages of love with threats and abuse.  He sent gifts to woo them, then described their homes and families to convince them he having them watched.  He invented alternate personas and claimed that he was having the girls followed.  He exploited Victim 1's love of her sister and coerced her into continual creation of sexually explicit conduct via the threat of harm to her sister.   All of these actions demonstrate strategy and control, the very faculties one would expect to be weakened by alcohol use.   Given the exploitation of those girls over a period of years, and his unwillingness to stop even when he was told to leave them alone, the need for specific deterrence weighs in favor of a sentence within the Guideline range.

D.  General Deterrence

Child exploitation crimes are unquestioningly among the most serious crimes prosecuted in federal court.  Children are among the most vulnerable of victims, and the use of the internet to reach them without immediate detection has exponential exacerbated this problem.  Imposing serious penalties on individuals who exploit children may deter others.  Congress saw fit to recognize the seriousness of sexual exploitation of a minor by setting a significant mandatory minimum- 15 years.   The defendant has asked that he be sentenced to the minimum.  That minimum sentence is more appropriate for a first time offender.  This defendant exploited multiple 12 year old girls for years, not only manipulating them into creating sexually explicit content but threatening them and their families.  He mentally and emotionally manipulated them, threatened them, and used his role as an authority figure to control them for years on end. A low-end of guidelines sentence appropriately accounts for his lack of criminal record and age, while imposing a sentence sufficient to meet the goals of just punishment.

### III.  Conclusion

For the foregoing reasons, the United States respectfully requests that he Court sentence the defendant to a term of imprisonment of 300 months to be followed by a 5 year period of supervised release.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By: */s/ Kristen M. Noto*
    Kristen M. Noto
    Assistant United States Attorney

Date:  9/14/2020

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Kristen M. Noto*
    Kristen M. Noto
    Assistant United States Attorney

Date: September 14, 2020